## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

| | | |
|---|---|---|
| SALAS et al., | § | |
|     **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **EP-24-CV-00009-DB** |
| | § | |
| **UNITED STATES OF AMERICA,** | § | |
|     **Defendant.** | § | |

## MEMORANDUM OPINION AND ORDER

On this day, the Court considered the above-captioned case. The parties have filed competing dispositive motions. On May 23, 2025, Plaintiffs[1] filed their "Motion for Summary Judgment" ("Motion for Summary Judgment"), ECF No.[2] 45, seeking summary judgment on various affirmative defenses raised by Defendant United States of America ("Defendant"). On May 28, 2028, Defendant filed its "Motion to Dismiss" ("Motion to Dismiss"), ECF No. 49, alleging Defendant has not waived its sovereign immunity, and as such, this Court does not have subject matter jurisdiction over any of Plaintiffs' claims. On June 13, 2025, this Court denied Defendant's Motion to Dismiss in a short order, ECF No. 75, and now thoroughly articulates its legal conclusions herein. Further, Plaintiffs' Motion for Summary Judgement is now ripe for review. For the foregoing reasons, Defendant's Motion to Dismiss is denied, and Plaintiffs' Motion for Summary Judgment is granted in part and denied in part.

---

[1] Lizzett Salas, *Individually, as Representative of the Estate of Anthony Salas, Deceased, as Heir of the Estate of Anthony Salas, Deceased, as Dependent Administrator of the Estate of Anthony Salas, Deceased, and in her capacity as Next Friend of A.S., I.S., and L.A.S., three Minor children*, Teresa Salas, and Juan Salas (collectively "Plaintiffs").

[2] "ECF No." refers to the Electronic Case Filing number for documents docketed in this case. Where a discrepancy exists between page numbers on filed documents and page numbers assigned by the ECF system, the Court will use the latter page numbers.

## BACKGROUND

This case involves the death of Texas Department of Public Safety ("DPS") Special Agent Anthony Salas ("SA Salas"). The following facts are derived from Plaintiffs' First Amended Complaint and supplemented by undisputed facts contained in Defendant's Answer,[3] Plaintiffs' Motion for Summary Judgment,[4] and Defendant's Motion to Dismiss.[5]

Between January 17, 2022, and January 28, 2022, the Del Rio Sector of U.S. Customs and Border Protection ("CBP") conducted a special operation which included the Maverick County Hydro Electric Power Plant ("Hydro Plant"), the area relevant to Plaintiffs' Amended Complaint. First Am. Compl. 17, ECF No. 17. On January 21, 2022, SA Salas was working alongside Border Patrol Agent Marvin Martinez ("BPA Martinez"). *Id.* at 16. Defendant admits that on January 21, 2022, BPA Martinez, while in the course and scope of his employment with Border Patrol, was involved in an accident wherein the government-operated vehicle ("GOV") BPA Martinez was driving rolled into a canal injuring SA Salas. Def.'s Answer to Pls.' First Am. Compl. 5–6, ECF No. 20. SA Salas subsequently succumbed to his injuries and was pronounced dead on January 22, 2022. First Am. Compl. 6, ECF No. 17. Defendant admits that at the time of the accident, SA Salas and six (6) undocumented individuals were riding in the rear of the GOV operated by BPA Martinez. Def.'s Answer to Pls.' First Am. Compl. 15, ECF No. 20.

On January 5, 2024, Plaintiffs brought claims under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2674 (28 U.S.C. Section 2671, *et seq*) against the United States of America alleging

---

[3] ECF No. 20.
[4] ECF No. 45.
[5] ECF No. 49.

several causes of action. *See* Original Compl., ECF No. 1.  Plaintiffs subsequently filed their First Amended Complaint, ECF No. 17, which is the operative document in this case.  The parties have completed discovery and have each filed dispositive motions to which the other responded.  On June 13, 2025, this Court issued a short order, ECF No. 75, denying Defendant's Motion to Dismiss.  This memorandum opinion and order will set out the Court's findings in full as to Defendant's Motion to Dismiss, as well as Plaintiffs' Motion for Summary Judgment, which is ripe for review.  The Court will address each argument in turn.

## LEGAL STANDARD

A.  Dismissal Under Rule 12(b)(1) and Sovereign Immunity

Under Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)"), a district court must dismiss a claim for lack of subject matter jurisdiction "when the court lacks the statutory or constitutional power to adjudicate" the claim. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998).  "Courts may dismiss for lack of subject matter jurisdiction on any one of three different bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Clark v. Tarrant Cnty., Tex.*, 798 F.2d 736, 741 (5th Cir. 1986) (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)).

As a sovereign entity, the United States is immune from suit unless, and only to the extent that, it has consented to be sued. *See Lehman v. Nakshian*, 453 U.S. 156, 160–161 (1981).  The FTCA is a limited waiver of sovereign immunity that allows plaintiffs to bring state law tort actions against the federal government. 28 U.S.C. § 2674.  Courts consider the application of the FTCA through a Rule 12(b)(1) motion because whether the government has waived its sovereign

3

immunity goes to the court's subject matter jurisdiction. *Willoughby v. U.S. ex rel. U.S. Dep't of the Army*, 730 F.3d 476, 479 (5th Cir. 2013).

The FTCA's waiver of immunity is subject to several exceptions. Among these is the "discretionary function exception" ("DFE"). The DFE withdraws the United States' consent to be sued under any state law tort when the plaintiff's claim is based on an act by a government employee that falls within that employee's discretionary authority. *See* 28 U.S.C. § 2680(a); *Tsolmon v. United States*, 841 F.3d 378, 382 (5th Cir. 2016). The Supreme Court has set forth a two-part test governs the application of the DFE. First, courts consider the nature of the employee's conduct and determine whether it "involves an element of judgment or choice." *United States v. Gaubert*, 499 U.S. 315, 322 (1991) (citing *Berkovitz ex rel. Berkovitz v. United States*, 486 U.S. 531, 536 (1988)) (cleaned up). A government employee cannot satisfy the requirement of judgment or chouce if "a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." *Berkovitz*, 486 U.S. at 536. In such circumstances, "the employee has no rightful option but to adhere to the directive." *Gaubert*, 499 U.S. at 322 (citing *Berkovitz*, 486 U.S. at 536). This analysis, however, does not stop there. At the second step, even if the conduct involves an element of judgment or choice, "that judgment [must be] of the kind that the discretionary function exception was designed to shield." *Berkovitz*, 486 U.S. at 536. Such choice must be "grounded in social, economic, [or] political policy." *United States v. Varig Airlines,* 467 U. S. 797, 814 (1984). The DFE will only apply if both prongs are met.

If any of a plaintiff 's claims survive the DFE and thus fall within the FTCA's waiver of sovereign immunity, courts turn to a third question: whether the government liable to the plaintiff on the merits. *Martin v. United States*, No. 24-362, 2025 WL 1657418 at *5 (U.S. June 12, 2025).

When it comes to that question, the FTCA provides that the government will usually be liable to the plaintiff if a "private individual under like circumstances," would be liable under "the law of the place" where the government employee's wrongful "act or omission occurred." 28 U.S.C §§ 2674, 1346(b)(1). Ordinarily, then, courts will find for the plaintiff if he can demonstrate that federal officials committed a tort under applicable state law. *Martin,* 2025 WL 1657418 at *5 (citations omitted).

B. Summary Judgment

Summary judgment is appropriate when, viewing the evidence and drawing all justifiable inferences in the light most favorable to the non-moving party, there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Talasek v. Nat'l Oilwell Varco, LP*, 16 F.4th 164, 168 (5th Cir. 2021). The appropriate inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

"The summary judgment process, in which affidavits and depositions, both pro and con, are submitted will reveal exactly what facts exist, not just what the parties generally claim to exist." *Sutton v. United States*, 819 F.2d 1289, 1299 (5th Cir. 1987). To sustain its burden, the movant must "identify those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits,'" to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Further, "the burden on the moving party may be discharged by "showing"—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. In response,

the non-movant "may not rest upon mere allegations contained in the pleadings but must set forth and support by summary judgment evidence specific facts showing the existence of a genuine issue for trial." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

Generally, the FTCA applies state law to determine the government's liability for torts within the FTCA's waiver of immunity. *Brown v. Nationsbank Corp.*, 188 F.3d 579, 586 (5th Cir. 1999) (citing 28 U.S.C. §§ 1346(b), 2674). Here, Plaintiffs' claims are governed by the substantive law of Texas, the state where the allegedly tortious acts and omissions occurred. First Am. Compl. 2, ECF No. 17.

## ANALYSIS

The following is a summary of the Court's findings. This Court has subject matter jurisdiction over Plaintiffs' FTCA claims. After accepting Plaintiffs' abandonment of some of the claims raised in their First Amended Complaint, Plaintiffs only have two remaining claims for the Court to consider. Plaintiffs allege two independent theories of neglect that caused SA Salas' death: (1) Agent Martinez' negligent use and operation of his GOV, and (2) the transportation of six detainees in violation of federal policy in the bed of an unsecured pick-up truck unrestrained (rather than utilizing the designated fifteen-passenger cargo van that was available or other safe transportation modes). The Court finds the DFE does not apply to these two claims. As such, Defendant has waived its sovereign immunity, and the Court may address the merits of these claims. Further, the Court construes Lizzett Salas' Standard Form 95 ("SF-95") as alleging a total sum certain of $15,000,000 in damages, including personal injury damages, in her capacity as administrator of SA Salas' estate. The Court will therefore allow Plaintiffs to submit evidence of

both wrongful death and SA Salas' personal injury damages, if the Defendant is found liable at trial.

Further, the Court will grant in part and deny in part Plaintiffs' Motion for Summary Judgment. There is no genuine dispute of material fact as to Defendant's affirmative defense #3 asserting Plaintiffs failed to exhaust all administrative remedies to establish jurisdiction because Plaintiffs' have satisfied all jurisdictional requirements as to the remaining two claims. However, the Court denies summary judgment as to Defendant's affirmative defense #4 regarding unavoidable accident because a genuine dispute of material fact exists as to whether BPA Martinez was negligent.

A. This Court has subject matter jurisdiction over Plaintiffs' remaining claims.

To begin, Plaintiffs advised the Court that it would withdraw two causes of action[6] raised in their First Amended Complaint, ECF No. 17. Resp. to Mot. to Dismiss 1, 10, ECF No. 71. The Court hereby finds Plaintiffs have abandoned their claims relating to 1) agents failing to exercise reasonable care in rendering services after the accident, and 2) Defendant's negligence in training. See First. Am. Compl. 20, 26, ECF No. 17. Accordingly, any requests for relief raised in Defendant's Motion to Dismiss as to these two claims are denied as moot.

There are two remaining claims for the Court's consideration. Plaintiffs allege two independent theories of neglect that caused SA Salas' death: (1) BPA Martinez' negligent use and operation of a motor vehicle and (2) the transportation of six detainees in the bed of an unsecured pick-up truck unrestrained (rather than utilizing the designated 15 passenger cargo van that was

---

[6] Plaintiffs withdrew their affirmative claims set forth in Paragraphs 144 and 167 of Plaintiffs' First Amended Complaint, ECF No. 17.

available or other safe transportation modes). Resp. to Mot. to Dismiss 20, ECF No. 71. Defendant argues these claims are barred by the DFE because "the actions taken by Defendant's agents were the product of the wide discretion afforded to them as law enforcement officers," and that these actions "were grounded in the sort of policy choices that the DFE was designed to shield from liability." Mot. to Dismiss 12, ECF No. 49. The Court decides Defendant's Motion to Dismiss based on the facts alleged in Plaintiff's First Amended Complaint, ECF No. 17, and any undisputed facts.

Generally, as a sovereign entity, the United States is immune from suit unless, and only to the extent that, it has consented to be sued. *Lehman*, 453 U.S. at 160–161. The FTCA is a limited waiver of sovereign immunity that allows plaintiffs to bring state law tort actions against the federal government. *See* 28 U.S.C. § 2674. The FTCA contains several exceptions, and the relevant one in this case is the DFE.

1. *The DFE does not apply to Plaintiffs' negligence claims surrounding BPA Martinez's use and operation of his GOV.*

At the outset, Plaintiffs' negligence claims surrounding BPA Martinez's use and operation of his GOV fall squarely outside of the purview of the DFE. *See* First. Am. Compl. 23–25, ECF No. 17. For the DFE to apply, the second step set forth in *Gaubert* requires discretionary actions to be grounded in the social, economic, or political considerations related to advancing that regulatory scheme. *Gaubert*, 499 U.S. at 323. In other words, some discretionary acts "cannot be said to be based on the purposes that the regulatory regime seeks to accomplish." *Id.* at 325, n. 7. In *Gaubert*, the Supreme Court addressed hypothetical circumstances to note it is "obviou[s]" that some discretionary acts performed by government agents "are within the scope of [their] employment but not within the discretionary function exception." *Id.* For example, if a

government employee "drove an automobile on a mission connected with his official duties and negligently collided with another car, the exception would not apply" because, while "driving requires the constant exercise of discretion, the official's decisions in exercising that discretion can hardly be said to be grounded in regulatory policy." *Id.*

*Gaubert's* hypothetical mirrors actions involved in this case. Even though BPA Martinez's use and operation of his GOV was in the course and scope of his employment, and involved discretionary acts, his actions fall outside of the DFE's exception because such discretion cannot be said to be grounded in CPB's regulatory policy. The discretionary actions BPA Martinez undertook cannot be said to be based on the purposes CBP's regulatory scheme seeks to accomplish, namely to "[p]rotect the American people, safeguard our borders, and enhance the nation's economic prosperity[7]." Because these actions cannot satisfy the second *Gaubert* prong, the DFE does not apply, and the Court has jurisdiction to address the merits of Plaintiffs' claims.

2. *The DFE does not apply to Plaintiffs' negligence claims surrounding the loading and transport of detainees in the bed of the GOV.*

Further, the DFE also does not apply to Plaintiffs' negligence claims surrounding the loading and transport of detainees in the bed of BPA Martinez' GOV because agents did not have discretion to act where there was a federal policy on point directing the course of action agents were required to follow. As previously iterated, the DFE applies if (1) the relevant employee's conduct is a "matter of choice," and (2) the choice or "judgment [is] of the kind that the discretionary function exception was designed to shield." *Tsolmon*, 841 F.3d at 382 (alterations and citation omitted). "[T]he discretionary function exception will not apply when a federal

---

[7] U.S. Customs and Border Protection, *Mission Statement*, https://www.cbp.gov/about [https://perma.cc/8YJF-VN9R] (last accessed June 22, 2025).

statute, regulation, or policy specifically prescribes a course of action for an employee to follow"

and the employee fails to adhere to such direction. *Berkovitz*, 486 U.S. at 536. "In other words,

the discretionary function exception does not apply if the challenged actions *in fact* violated a

federal statute, regulation, or policy." *Spotts v. United States*, 613 F.3d 559, 567 (5th Cir. 2010)

(emphasis added).

In its Motion to Dismiss, Defendant argues Plaintiffs fail to establish an unequivocal waiver

of sovereign immunity because agents had discretion to act based on operational circumstances.

Mot. to Dismiss 12–13, ECF No. 49. Defendant avers Section 2.6 of CBP's National Standards

on Transport, Escort, Detention, and Search ("TEDS") gives agents discretion to decide to load

and transport detainees in the bed of the GOV based on operational circumstances. *Id.* Plaintiffs

argue Section 2.5 of TEDS mandated specific conduct in these circumstances, and that agents

failed to obey the prescriptive policies in TEDS and in the Motor Vehicle Manual Handbook

("MVMH"), which is incorporated by this section. Resp. to Mot. to Dismiss 5, ECF No. 71.

The parties dispute which sections of TEDS control here. Plaintiffs assert Section 2.5's

"Transporting and Escorting Officer/Agent Responsibilities" portion directed the agents' actions

in this case. This portion reads "Compliance: Officers/Agents must comply with all operational

office's policies and procedures pertaining to the use of government vehicles as articulated in the

most recent Motor Vehicle Management Handbook, and must operate vehicles in accordance with

all appropriate traffic laws and regulations." Ex. 8, Mot. to Dismiss, ECF No. 49-9. Plaintiffs also

argue the "Seatbelts" portion of Section 2.6 of TEDS prescribed specific actions, which states

"[a]ll CPB employees in all seats of any motor vehicle used on official business must have their

seatbelt properly fastened at all times when the vehicle is in motion. This includes CPB-owned

10

and leased vehicles and rental vehicles operated by CPB employees while in temporary duty or travel status. Detainees should always be in seatbelts if available in the vehicle." *Id.* The incorporated MVMH in turn directs operators of GOVs to comply with the manufacturer's manuals and instructions on the operation of these vehicles. Specifically, the MVMH notes "[i]t is the responsibility of every operator of a CPB vehicle . . . to ensure both the operator and occupants comply with any additional requirements" which include that "[s]eat belts, lap belts, and shoulder restraints" "should be used at all times." Resp. to Mot. to Dismiss 118, ECF No. 71.

The Court agrees with Plaintiffs' argument that BPA Martinez did not have discretion to choose to load and transport detainees in the bed on his GOV. Both the plain language of Section 2.5 and the MVMH required agents to ensure detainees were in a seat and restrained by seatbelts, and the detainees in this case were admittedly *not*. Further, Defendant's organizational representative, Russell Church, confirmed these sections are prescriptive. Dep. of Russell Church, Resp. to Mot. to Dismiss 296-97, ECF No. 71. Because these federal polices specifically direct the course of action agents need to follow when loading and transporting detainees, agents did not have discretion to not follow them under *Gaubert's* first step for purposes of the DFE.

Defendant's argument regarding the discretion in Section 2.6 of TEDS afforded to agents is unpersuasive. The "Gound Transportation and Escort Standards - Unsecured Vehicles" portion of Section 2.6 reads in part as follows: "[u]sing an unsecured vehicle to transport detainees should be avoided; however operational circumstances may require officers/agents to use an unsecured vehicle to transport a detainee." Ex. 8, Motion to Dismiss, ECF No. 49-9. Defendant's argument that Section 2.6 gives agents discretion to load and transport detainees in the bed of the vehicle rests on defining an "unsecured vehicle" as one that does not have seatbelts making Section 2.5's

prescriptive requirements inapplicable. *See* Mot. to Dismiss 13, ECF No. 49. But the Court need not come up with a definition for an "unsecured vehicle" because TEDS itself provides one.

Section 8 of TEDS includes definitions for terms used therein and defines an "unsecured vehicle" as "[a] transport vehicle that is not equipped with security measures that separate detainees from officers/agents, and may not limit detainee egress from the vehicle." Ex. 8, Motion to Dismiss, ECF No. 49-9. Accordingly, the discretion that Section 2.6 gave agents was what type of vehicle to use not what rules to follow when using that vehicle. The choice agents had was to either use a GOV that had security restraints to separate detainees from officers and could limit detainee egress from the vehicle or use a GOV without those security restraints. Agents in fact made that choice. But even if agents choose to transport detainees in an unsecured vehicle, based on a plain reading of TEDS, Section 2.5's mandatory policies still apply. Even detainees transported in an unsecured vehicle would have been required by Section 2.5 to have been restrained with seatbelts if they were available. Therefore, for the reasons stated above, Defendant fails to meet *Gaubert's* first requirement because agents did not have discretion to decide to load and transport detainees in the bed of the vehicle based on the specific directives in Section 2.5 of TEDS and the MVHM's incorporated directives.[8] Because *Gaubert's* first prong is not met, the DFE does not apply to Plaintiffs' claim.

---

[8] Because the Court finds Plaintiffs have met their burden to show *Gaubert's* first prong cannot be met based on Section 2.5 of TEDS and its incorporated directives, the Court will not address the remaining directives identified by the parties. *See generally* Mot. to Dismiss 12–21, ECF No. 49 (addressing CPS's Standards of Conduct and CPB Del Rio Sectors' Spring 2020 Directive).

B.  <u>Plaintiffs' Motion for Summary Judgment is granted in part and denied in part.</u>

The Court will also address Plaintiffs' Motion for Summary Judgment, which seeks summary judgment on fourteen (14) of the forty-nine (49) affirmative defenses Defendant raised in its Answer, ECF No. 20.  Summary judgment is appropriate when, viewing the evidence and drawing all justifiable inferences in the light most favorable to the non-moving party, there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c).  The appropriate inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.  To sustain its burden, the movant must identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, to demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323.  Further, "the burden on the moving party may be discharged by "showing"—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.  In response, the non-movant "may not rest upon mere allegations contained in the pleadings but must set forth and support by summary judgment evidence specific facts showing the existence of a genuine issue for trial." *Ragas*, 136 F.3d at 458.

  1.  *Summary judgment is denied as moot regarding the affirmative defenses Defendant has withdrawn and Plaintiffs' abandoned claims.*

In its response to Plaintiffs' Motion for Summary Judgment, Defendant advised it would withdraw the following affirmative defenses[9]: #5 related to an "act of god"; #6 related to Lizzett

---

[9] The "#" symbol is used in this section to denote the paragraph numbers referenced originally in Defendant's Answer to Plaintiffs' First Amended Complaint, ECF No. 20, which correspond with the paragraph numbers in Defendant's Response to Plaintiff's Motion for Summary Judgment, ECF No. 60.

13

Salas' standing as SA Salas' estate representative; #7 related to liability for pre-existing, intervening, or superseding occurrences; #9 related to injuries caused by incidents prior to or after the incident made the basis of the suit; #27 related to Plaintiffs' failure to mitigate damages; #37 related to the customs duty exception; #43 related to joinder of necessary parties; #44 related to standing to bring the claims; and #46 related to designation of responsible third-parties. Resp. to Mot. for Summ. J. 5–9, ECF No. 60.  As such, any claims for relief in Plaintiffs' Motion for Summary Judgment as to these affirmative defenses are denied as moot.

Further, because Plaintiffs abandoned claims related to rendering aid and negligent training, Plaintiffs' requests for summary judgment on affirmative defenses related to those claims are denied as moot.  This denial applies to the following affirmative defenses: #3 regarding exhaustion of administrative remedies related to the rendering aid claim; #31 regarding a justiciable case or controversy related to the rendering aid claim; and #32 regarding preemption related to the rendering aid claim. *See* Resp. to Mot. for Summ. J. 5–8, ECF No. 60.

2.  *Summary judgment is granted regarding affirmative defenses based on subject matter jurisdiction because the DFE does not apply to Plaintiffs' live claims.*

Moreover, this Court has already decided the DFE does not apply to the remaining live claims: (1) BPA Martinez' negligent use and operation of his GOV, and (2) the transportation of six detainees in violation of federal policy in the bed of an unsecured pick-up truck unrestrained (rather than utilizing the designated 15 passenger cargo van that was available or other safe transportation modes).  As to these claims, the Court finds Defendant has waived its sovereign immunity. Accordingly, summary judgment as to the following affirmative defenses is granted: #9 regarding jurisdictional prerequisites for the live claims; #31 regarding a justiciable case or

controversy related to the live claims; and #32 regarding preemption related to the live claims. Mot. for Summ. J. 7–8, 9–10, ECF No. 45.

This leaves the Court two summary judgment disputes to resolve: whether summary judgment is proper on Defendant's affirmative defense #3 alleging that Lizzett Salas failed to exhaust her administrative claims in her capacity as administrator related to SA Salas' personal injury damages, and whether summary judgment is proper as to Defendant's affirmative defense #4 related to unavoidable accident. *Id.* at 3–5.

> 3. *Summary Judgment is granted on affirmative defenses related to Plaintiffs' administrative claims because Plaintiff Lizzett Salas properly included a sum certain of $15,000,000 in total damages on the SF-95.*

Turning first to the dispute surrounding personal injury damages. Plaintiffs submitted their respective SF-95s[10] within two years of the date of the incident, and more than six months passed between their submission and the filing of the instant suit. Mot. for Summ. J. 3–4, ECF No. 45. Defendant specifically contests Lizzett Salas' SF-95[11], arguing "[t]he administrative claim submitted by Lizzett Salas on behalf of the Estate did not seek a damage amount for personal injuries of Anthony Salas . . . Box 12b of the SF-95 titled "PERSONAL INJURY" is blank." Resp. to Mot. for Summ. J. 3, ECF No. 60. Plaintiffs do not contest Box 12b on Lizzett Salas' SF-95 is blank. Instead, Plaintiffs point to three key facts to establish Defendant had notice of its claims and damages at the presentment stage of their FTCA claims: (1) this SF-95 provided notice the claimant was an estate both in Box 2 and under Box 10; (2) in Box 10 Personal Injury/ Wrongful

---

[10] A Standard Form 95 ("SF-95") "is a standardized form used to present claims against the United States under the FTCA for property damage, personal injury, or death allegedly caused by a federal employee's negligence." *Spriggs v. United States*, 132 F.4th 376, 378 (5th Cir. 2025).

[11] Lizzett Salas' SF-95, Ex. 2, Mot. to Dismiss, ECF No. 49-3.

Death, Lizzett Salas included a narrative of the damages sought and included "verbatim the elements of survival damages from the Texas Pattern Jury Charge;" and (3) Box 12d., which should include the total amount of damages sought, includes a total amount of $15,000,000 and this box is the only one that states "(Failure to specify may cause forfeiture of your rights)." Reply to Def.'s Resp. to Mot. for Summ. J. 3–5, ECF No. 73. Therefore, the question is whether leaving the personal injury box of the SF-95 blank but including a sum certain in the "Total" box, constitutes a waiver of personal injury damages in an FTCA claim. This Court finds it does not.

The FTCA provides that tort actions are forever barred "against the federal government unless the claim is first presented to the appropriate federal agency within two years after such claim accrues." *Trinity Marine Prods., Inc. v. United States*, 812 F.3d 481, 487 (5th Cir. 2016) (internal citations omitted). The FTCA provides in pertinent part:

> [A] claim shall be deemed to have been presented when a Federal agency receives from a claimant . . . or legal representative, an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain for injury to or loss of property, personal injury or death alleged to have occurred by reason of the incident [.]

28 C.F.R. § 14.2(a). Presentment is a jurisdictional prerequisite, and its purpose is to "ease court congestion and avoid unnecessary litigation, while making it possible for the Government to expedite the fair settlement of tort claims asserted against the United States." *Life Partners Inc. v. United States*, 650 F.3d 1026, 1030 (5th Cir. 2011) (quotation omitted). The Fifth Circuit has held an "individual with a claim against the government satisfies the notice requirement of § 2675 if he or she: '(1) gives the agency written notice of his or her claim sufficient to enable the agency to investigate and (2) places a value on his or her claim.'" *Adams v. United States,* 615 F.2d 284, 289 (5th Cir. 1980), *clarified*, *Adams v. United States*, 622 F.2d 197 (5th Cir. 1980). While presentment

does not need to take a specific form, claimants typically submit a Standard Form 95 ("SF-95"), which "is a standardized form used to present claims against the United States under the FTCA for property damage, personal injury, or death allegedly caused by a federal employee's negligence." *Spriggs*, 132 F.4th at 378. Because the purpose of presentment is to give the United States sufficient information to enable it to investigate potential claims and facilitate settlement of such claims, the key factor is notice of the claim and its value.

Here, it is undisputed Defendant received Lizzett Salas' SF-95. This form contained a narrative that included claims that SA Salas suffered "pain and mental anguish" and "also incurred medical expenses before his death" among other things. *See* Lizzett Salas' SF-95, Ex. 2, Mot. to Dismiss, ECF No. 49-3. This SF-95 form further noted in what capacity she was asserting claims, namely as the Independent/Dependent Representative/Administratrix of the Estate of Anthony Salas, Deceased, and that the total sum certain sought was $15,000,000. *Id.* In its totality, this SF-95 gave Defendant notice of the basis of the underlying tort claims and the potential value of the claims. Therefore, Plaintiffs satisfied the jurisdictional requirement of presentment under the FTCA. Plaintiff Lizzett Salas can introduce evidence of personal injury damages in addition to wrongful death damages if Defendant is found liable at trial up to the total sum certain asserted of $15,000,000. Accordingly, summary judgment of Defendant's affirmative defense surrounding jurisdiction for personal injury damages claims is granted.

> 4. *Summary Judgment is denied regarding Defendant's affirmative defense of unavoidable accident because there is a genuine dispute of material fact related to agents' negligence.*

The Court now turns to summary judgment on Defendant's affirmative defense of unavoidable accident. Because the FTCA applies state law to determine the government's liability

for torts within the FTCA's waiver of immunity, Plaintiffs' claims and Defendant's affirmative defenses are governed Texas law. *Brown*, 188 F.3d at 586.  Under Texas law, "[a]n occurrence may be an 'unavoidable accident,' that is, an event not proximately caused by the negligence of any party to it." *Dallas v. Tex. Elec. Co-op.*, 157 S.W.3d 429, 432 (Tex. 2005) (citing Texas Pattern Jury Charge).  The Texas Supreme Court explained that they have said this instruction ordinarily applies to causes such as fog, slick pavement "or obstruction of view." *Id.* at 433.  The Texas Supreme Court further explained that the language of the instruction informs the trial of fact that it may consider causes of the occurrence other than the negligence of the parties. *Id.*

Plaintiffs assert summary judgment is proper because they "have alleged specific acts of negligence that, if proven, directly caused the injuries at issue" and because "[t]he unavoidable accident defense requires evidence showing that the incident occurred without negligence and could not have been prevented by the exercise of ordinary care." Mot. for Summ. J. 4, ECF No. 45 (emphasis removed from the original).  Defendant contends there is evidence to support this defense because a DPS Report concludes that "[t]he private property crash that resulted in the death of Special Agent Anthony Salas was the result of poor visibility due to foliage concealing the ditch and vehicle positioning due to roadway slope." Resp. to Mot. for Summ. J. 4, ECF No. 60; DPS Investigative Report, Ex. 1, Resp. to Mot. for Summ. J., ECF No. 60-1.  In their reply, Plaintiffs object to the use of this DPS report on the basis that it is not proper summary judgment evidence because "[i]t violates Federal Rule of Evidence (FRE 801) hearsay, . . . [and] is not

18

properly authenticated and violates FRE 901." Reply to Def.'s Resp. to Mot. for Summ. J. 7, ECF No. 73. After due consideration, Plaintiffs' objection is hereby sustained.[12]

However, Defendant contends BPA Martinez testified "he did not see the canal/ditch prior to the accident." Resp. to Mot. for Summ. J. 5, ECF No. 60. With this, Defendant raises a genuine issue of material fact. Whether or not BPA Martinez saw the canal goes directly to the ultimate issue of negligence, which is a central part of the unavoidable accident defense. Because Defendant raises genuine issue of material fact, summary judgment as to Defendant's affirmative defense #4 related to unavoidable accident is denied.

## CONCLUSION

For the foregoing reasons, the Court finds Plaintiffs' remaining live claims are not barred by the DFE. Additionally, if Defendant is found liable, Plaintiff Lizzett Salas may present evidence at trial surrounding both personal injury and wrongful death damages up to the total of $15,000,000 asserted in her administrative claims. Lastly, summary judgment is denied as to Defendant's affirmative defense of unavoidable accident under Texas law.

---

[12] The Court agrees there is no proof the author is qualified by knowledge, skill, experience, training or education and the report is being offered as expert opinion without properly qualifying the expert, showing the opinions are reliable. *See generally* DPS Investigation Report, Ex. 1, Resp. to Mot. for Summ. J., ECF No. 60-1.

Accordingly, **IT IS HEREBY ORDERED** Plaintiffs' "Motion for Summary Judgment," ECF No. 45, is **GRANTED IN PART** and **DENIED IN PART.**

**IT IS FURHER ORDERED** Defendant's "Motion to Dismiss," ECF No. 49, is **DENIED.**

SIGNED this _23ʳᵈ_ day of **June 2025**.



_____
**HONORABLE DAVID BRIONES**
**SENIOR UNITED STATES DISTRICT JUDGE**

20